(15 Misc. Rep. 60.)

### GEOFFROY v. GILBERT et al.

(Supreme Court, Special Term, New York County. December, 1895.)

LIFE POLICY—WHO ENTITLED TO PROCEEDS.

Where a father took out a policy on his life, payable to his daughter four years old, or her "legal representatives," and she married, and died before her father, her husband is not entitled to the proceeds of the policy.

Action by a husband, as administrator of his wife, against her father's executor and others, to determine the right to the proceeds

---

[1] Code Civ. Proc. § 2663, provides that a person may renounce his right to administer an estate by written instrument acknowledged, etc., and filed in the surrogate's office.

of a policy on the life of the father, payable to plaintiff's wife or her "legal representatives," the wife having died first.   Judgment for defendants.

Fettretch, Silkman & Seybel, for plaintiff.
Tyler & Durand, for defendants Gilbert and Randolph.
Williams & Ashley, for Home for Children.

RUSSELL, J.   William R. Clarkson, deceased, in 1868 took out a $10,000 insurance policy in the New York Life Insurance Company upon his own life, payable to his daughter Jennie Clarkson, then four years of age, or her legal representatives.   The policy was paid up in ten years, but remained in his custody till his death. His daughter married the plaintiff, and died childless and intestate on the 27th day of June, 1891.   The father, whose life was insured, survived his daughter nearly four years, dying on the 16th day of March, 1895.   The husband now claims, as the survivor of the wife, the right to the amount of the insurance policy, which amount has been paid into court by the insurance company.   The executors claim that the fund belongs to the estate.   It needs some patient study to ascertain precisely what rules, as settled by our court of last resort, apply to the solution of a case like this.   I am ·satisfied, however, that it is settled by the decisions of the court of appeals—First, that the taking of a life insurance policy, payable to a wife or child, is not simply a gift, but confers such a vested interest that the insured has no right, ·after the valid inception of the policy, to destroy their interest by surrender or diversion;   second, that such vested interest, however, is of a contingent nature, and ordinarily terminates, as to the person named as beneficiary, with the death of that person, if such death occurs before the decease of the insured.   Whitehead v. Insurance Co., 102 N. Y. 144, 6 N. E. 267;   U. S. Trust Co. v. Mutual Ben. Life Ins. Co., 115 N. Y. 152, 21 N. E. 1025;   Walsh v. Insurance Co., 133 N. Y. 408, 31 N. E. 228. Therefore, if the policy had been payable simply to Jennie Clarkson, her death prior to that of her father would have terminated her interest.   But an addition is made to her name, as beneficiary, of the words, "or legal representatives."   Primarily, these words signify the executors or administrators of a deceased person.   They, however, have been construed to refer to blood relations standing as heirs or next of kin, and are held to mean that class of persons where the circumstances indicate such intention.   Tillman v. Davis, 95 N. Y. 17;   Greenwood v. Holbrook, 111 N. E. 465, 18 N. E. 711; Griswold v. Sawyer, 125 N. Y. 411, 26 N. E. 464.   The last-named case arose on the construction of the term as used in a life insurance policy.   At the time of the issuing of the policy there were three persons parties to the contract then made, namely, the life insurance company, the insured, William R. Clarkson, and the beneficiary, Jennie Clarkson, a child four years of age.   The contract was therefore mainly between the company and the insured, he acting for himself and as agent for his child.   At that time there was no prospect of her contracting a marriage for many years to come.   She

did, however, have a father and mother, with the possibility of brothers and sisters in the near future. There could at that time be no distinction between the effect to be given to the term "legal representatives," whether it referred to her next of kin or to her executors and administrators, for the latter would only take in a representative capacity for the benefit of the next of kin. In the natural course of human events, the father expected the daughter to outlive him, so that she would receive the benefit of the policy herself, while he did have the contingent clause making the policy payable to her legal representatives in case she should not survive him. That contingency would naturally look to her death before reaching womanhood and marriage. He declares in the policy itself that he pays the premium for her benefit. There was, therefore, in the minds of the contracting parties, an undoubted reference to the next of kin of Jennie Clarkson, as included by the term "legal representatives," and no thought of a construction which would turn a wise and tender provision for a daughter into a large pecuniary benefit to a stranger in blood, allied to the daughter 22 years later by marriage for only a year and a half. While we do not give so large effect to the wishes and intent of the originator of the insurance fund as in cases of testamentary disposition, yet courts are largely guided, where doubt arises who is the proper beneficiary, by the evident purpose of the father or husband to care for those who are dependent upon him, and if, in so doing, he has paid for an insurance policy, to assume that he provided for the contingency, which might happen, of the beneficiary's not living to enjoy the benefit, by the substitution of those next in interest to him from family ties. The husband, therefore, does not take jure mariti, for the wife's interest terminated; he does not take as legal representative, for they take by substitution, and the substituted beneficiaries are the next of kin. I am therefore constrained to hold that the husband is not entitled to the life insurance fund, and direct the dismissal of the complaint, with costs. The executors of the insured should receive the fund.

Complaint dismissed, with costs.